JENNER & BLOCK LLP
Amy M. Gallegos
(Cal. Bar No. 211379)
  agallegos@jenner.com
Christopher S. Lindsay
(Cal. Bar No. 280525)
  clindsay@jenner.com
Kathleen J. Covarrubias
(Cal. Bar No. 288891)
  kcovarrubias@jenner.com
Mara R. Ludmer
(Cal. Bar No. 307662)
  mludmer@jenner.com
633 W. 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

Attorneys for Plaintiff
Edelynne Bergado

ASIAN AMERICANS
ADVANCING JUSTICE
Laboni A. Hoq
(Cal. Bar No. 224140)
  lhoq@advancingjustice-la.org
Christopher M. Lapinig
(Cal. Bar No. 802525)
  clapinig@advancingjustice-la.org
1145 Wilshire Blvd.
Los Angeles, CA 90017
Telephone: (213) 977-7500
Facsimile: (213) 977-7595

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDELYNNE BERGADO, <br><br> Plaintiff, <br><br> v. <br><br> MARLON VELONZA, et al., <br><br> Defendants. | Case No. 2:17-cv-09070-JVS-JC <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT** <br><br> Date:        March 5, 2018 <br> Time:        1:30 p.m. <br> Courtroom: 10C <br> Judge:       Hon. James V. Selna |

2659833.7

# TABLE OF CONTENTS

I.      Introduction. ...................................................................................... 1

II.     The Defendants' Motion Should Be Denied. ..................................... 3

    A.   The Defendants Cannot Assert A Statute-Of-Limitations Defense To Any Claim In This Case. ...................................................................... 4

    B.   The Complaint Sufficiently Pleads Forced-Labor Claims Under The TVPA Against Dr. Cadaoas and Mr. Orqueza. ......................................... 6

    C.   The Complaint Sufficiently Pleads A Peonage Claim Against Dr. Cadaoas. ...................................................................................... 8

    D.   The Defendants Violated The TVPA By Knowingly Benefitting From Ms. Bergado's Servitude. ......................................................................... 9

    E.   Ms. Bergado Was Not Required To Attach A Written Contract To Her Complaint. ................................................................................... 10

    F.   Ms. Bergado's Fraud Claim Is Sufficiently Pled. ....................... 11

    G.   The Complaint Adequately Pleads Negligent Infliction Of Emotional Distress. ...................................................................................... 12

    H.   The Complaint Properly States Negligence Claims. ................... 13

    I.   There Is No Basis To Dismiss Ms. Bergado's Conversion Claim. ............ 14

    J.   The Complaint Sufficiently Pled A False-Imprisonment Claim Against Mr. Orqueza. ................................................................................... 15

    K.   Ms. Bergado's Quantum-Meruit And Unjust-Enrichment Claims Are Adequately Pled. ......................................................................... 16

        1.   Duplication Is Not A Basis For Dismissal. ........................... 16

        2.   The Claims Are Not Preempted By Federal Law. ................ 17

3.     The Claims Are Not Preempted By State Law......................................20

L.    If The Court Dismisses Any Claim, Leave To Amend Should Be
       Granted...........................................................................................21

III.  No More Definite Statement Is Required. .......................................................22

IV.  Conclusion. ...................................................................................................22

2659833.7

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Anderson v. Sara Lee Corp.*,
   508 F.3d 181 (4th Cir. 2007)................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................3

*Barker v. Riverside Cty. Office of Educ.*,
   584 F.3d 821 (9th Cir. 2009)....................................................3, 8, 9

*Behnke v. State Farm Gen. Ins. Co.*,
   196 Cal. App. 4th 1443 (2011).............................................................12

*Burgess v. Superior Court*,
   2 Cal. 4th 1064 (1992).......................................................................12

*Carrillo v. Schneider Logistics, Inc.*,
   No. 11-8557, 2013 WL 12124123 (C.D. Cal. May 13, 2013) ..............17, 18, 19

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011)............................................................5

*Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.*,
   29 Cal. 4th 189 (2002).......................................................................11

*Dang v. City of Garden Grove*,
   No. 10-0338, 2011 WL 3419609 (C.D. Cal. Aug. 2, 2011)..............................13

*Deressa v. Gobena*,
   No. 05-1334, 2006 WL 335629 (E.D. Va. Feb. 13, 2006).............................5, 6

*Ellerbe v. Howard*,
   No. 86-957, 1989 WL 64156 (W.D.N.Y. June 13, 1989)..................................8

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003)...........................................................21

*English v. Gen. Elec. Co.*,
  496 U.S. 72 (1990) ...............................................................................17

*Enter. Leasing Corp. v. Shugart Corp.*,
  231 Cal. App. 3d 737 (1991) ................................................................14

*Fermino v. Fedco, Inc.*,
  7 Cal. 4th 701 (1994) ...........................................................................15

*In re Trader Joe's Tuna Litig.*,
  No. 16-1371, 2017 WL 4442918 (C.D. Cal. Oct. 3, 2017) .................17

*Indus. Truck Ass'n, Inc. v. Henry*,
  125 F.3d 1305 (9th Cir. 1997) .............................................................18

*Kiwanuka v. Bakilana*,
  844 F. Supp. 2d 107 (D.D.C. 2012) ...................................................5, 6

*Lagasan v. Al-Ghasel*,
  92 F. Supp. 3d 445 (E.D. Va. 2015) ....................................................15

*Lantzy v. Centex Homes*,
  31 Cal. 4th 363 (2003) ...........................................................................6

*Larin Corp. v. Mueller*,
  364 F. App'x 380 (9th Cir. 2010) ........................................................14

*Lazar v. Superior Court*,
  12 Cal. 4th 631 (1996) .........................................................................12

*Lorenz v. Safeway, Inc.*,
  241 F. Supp. 3d 1005, 1023 (N.D. Cal. 2017) ......................................4

*Melendez v. U.S. Bank Nat'l Ass'n*,
  No. 15-8633, 2016 WL 446528 (C.D. Cal. Feb. 2, 2016).............. 10, 11

*Miller v. City of Los Angeles*,
  No. 13-5148, 2014 WL 12610195 (C.D. Cal. Aug. 7, 2014)...............22

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
  223 Cal. App. 4th 1105 (2014).............................................................12

OPPOSITION TO MOTION TO DISMISS

iv

*Ribot v. Farmers Ins. Grp.*,
  No. 11-2404, 2011 WL 13128072 (C.D. Cal. Nov. 23, 2011)...........................19

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017) ...................................................................10

*Rojo v. Kliger*,
  52 Cal. 3d 65 (1990)...........................................................................20, 21

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*,
  32 Cal. App. 4th 985 (1995) ....................................................................12

*Schanafelt v. Seaboard Fin. Co.*,
  108 Cal. App. 2d 420 (1951) ...................................................................15

*Scofield v. Critical Air Med., Inc.*,
  45 Cal. App. 4th 990 (1996) ....................................................................15

*Self Directed Placement Corp. v. Control Data Corp.*,
  908 F.2d 462 (9th Cir. 1990) ...................................................................13

*Sosnowy v. A. Perri Farms, Inc.*,
  764 F. Supp. 2d 457 (E.D.N.Y. 2011) ......................................................19

*Stoll v. Runyon*,
  165 F.3d 1238 (9th Cir. 1999)....................................................................4

*Taylor v. Trojan Labor of Nashville, LLC*,
  No. 13-00120, 2013 WL 1826450 (M.D. Tenn. Apr. 30, 2013).......................20

*Van v. Wal-Mart Stores, Inc.*,
  583 F. App'x 761 (9th Cir. 2014)..........................................................15, 16

*Wang v. Chinese Daily News, Inc.*,
  623 F.3d 743 (9th Cir. 2010) ..............................................................17, 19

*Williams v. Oberon Media, Inc.*,
  No. 09-8764, 2010 WL 1644888 (C.D. Cal. Mar. 4, 2010)...........................2, 10

*Williamson v. Gen. Dynamics Corp.*,
  208 F.3d 1144 (9th Cir. 2000)..............................................................18, 19

**STATUTES**

18 U.S.C. § 1581 .................................................................................... 8

18 U.S.C. § 1589 .................................................................................... 7

18 U.S.C. § 1595 .......................................................................... 2, 7, 10

Cal. Civ. Code § 52.5 ............................................................................. 4

**OTHER AUTHORITIES**

14A Cal. Jur. 3d Conversion § 56 (2018 ed.) ..................................... 14

Fed. R. Civ. P. 8(d)(2) ........................................................................ 13

Fed. R. Civ. P. 8(d)(3) ........................................................................ 13

Hon. Zerne P. Haning, et al., Cal. Practice Guide: Personal Injury
    (The Rutter Group 2017) ........................................................... 4 ,13

1 Witkin, Summary 11th Contracts § 1050 (2017) .............................. 17

3 Witkin, Cal. Proc. 5th Actions § 777 (2008) ..................................... 6

4 Witkin, Cal. Proc. 5th Pleadings § 566 (2008) ................................ 17

## I.    __Introduction__.

Ms. Bergado has endured a harrowing ordeal. In 2014, when she was a young single mother living in a rural province in the Philippines, she was lured to the United States by Marlon and Nelle-Ann Velonza with promises of a well-paying job and a green card. Compl. ¶ 1(1).[1] Instead, she was forced into involuntary servitude for almost three years. *Id.* ¶¶ 24(1)–36(1). She worked over fourteen hours a day, seven days a week, in the Velonzas' home. *Id.* ¶ 24(1). The Velonzas verbally and physically abused Ms. Bergado, and she was not allowed to leave the Velonzas' apartment without supervision. *Id.* ¶¶ 24(1)–30(1). They told Ms. Bergado that she would be imprisoned and would lose everything if she told anyone about her situation or tried to escape. *Id.* ¶ 1(1). Ms. Velonza's sister, Dr. Josephine Cadaoas, and her brother, Elmo Orqueza, knew about Ms. Bergado's enslavement. *Id.* ¶¶ 24(1), 34(1)–36(1). They helped the Velonzas cover up what they were doing to Ms. Bergado, and they benefitted from Ms. Bergado's servitude because she performed work for them too. *Id.* ¶¶ 24(1), 34(1)–35(1), 37(1). After years in servitude, Ms. Bergado was rescued by the police in January 2017. *Id.* ¶ 2(1), 39(1). Eleven months later, she filed this action, seeking years of unpaid wages, compensation owed to her under state and federal laws benefitting victims of human trafficking, and redress for the physical and emotional trauma she suffered and continues to suffer as a result of her experience.

Defendants' motion does not attack the core allegations of Ms. Bergado's complaint. Instead, the defendants have moved to dismiss a few of Ms. Bergado's causes of action as time-barred, and a few others as inadequately pled, in particular as to Dr. Cadaoas and Mr. Orqueza. None of their arguments has any merit.

---

[1] The defendants' approach to the misnumbered paragraphs in the complaint resolves the issue. Mot. at 2 n.2. We will apply the same method.

*First*, none of Ms. Bergado's claims are time-barred. The California Trafficking Victims Protection Act tolls the limitations period for any claim arising from trafficking—including contract and tort claims—until the victim is freed. Even if that statute did not apply for some reason, multiple equitable doctrines counsel against permitting the defendants to assert any statute-of-limitations defense that would allow them to benefit from Ms. Bergado's inability to file suit while the defendants were holding her captive.

*Second*, the complaint more than adequately alleges facts which, if proven, would establish that Mr. Orqueza and Dr. Cadaoas knowingly benefited from Ms. Bergado's forced labor. In addition, the complaint expressly pleads that Ms. Bergado was being made to work for Dr. Cadaoas in repayment of a debt—the essence of a peonage claim—and that Dr. Cadaoas knew of and acknowledged the arrangement. Compl. ¶ 35(1). The defendants' contention that a knowing benefit is a remedy, not a cause of action, misunderstands the statute. "Knowingly benefits" is a description of a basis for liability—a knowing beneficiary of human trafficking is liable to the victim. 18 U.S.C. § 1595(a).

*Third*, the defendants' contention that Ms. Bergado's breach-of-contract claim must be dismissed because the contract was not attached to the complaint is incorrect. A plaintiff alleging a breach of contract need not append the contract to the complaint. Pleading the "relevant terms" of the contract is sufficient. *See, e.g.*, *Williams v. Oberon Media, Inc.*, No. 09-8764, 2010 WL 1644888, at *6 (C.D. Cal. Mar. 4, 2010).

*Fourth*, contrary to the defendants' assertions, Ms. Bergado's complaint plainly alleges the facts and circumstances that make up her fraud claim—the Velonzas misrepresented her salary, her job, and that they would help her get a green card in order to induce her to come to the United States, where they then held her in captivity and used her for forced labor. Compl. ¶¶ 17(1)–20(1).

OPPOSITION TO MOTION TO DISMISS

2

*Fifth*, there is no basis to dismiss Ms. Bergado's claim for negligent infliction of emotional distress. The defendants' only argument is that this claim should not have been pled separately, but this form of pleading is common and allowed under the Federal Rules.

*Sixth*, the defendants' only argument about Ms. Bergado's claims for negligence and negligence per se is that they incorporated too much by reference. That is not grounds for dismissal, especially since the defendants do not contend that they are confused by the claims or lack proper notice as to their basis.

*Seventh*, the defendants' only argument against Ms. Bergado's conversion claim is the statute of limitations. That defense is not available to them here. Although the defendants neglected to bring the other arguments reference in their notice of motion, thereby waiving them, those arguments had no merit anyway. A plaintiff need not prove that the defendant is still in possession of her converted property, nor must she demonstrate that she demanded its return.

*Eighth*, the defendants' arguments about the sufficiency of Ms. Bergado's false-imprisonment claim against Mr. Orqueza present questions of fact, not law, and therefore cannot be resolved at the pleading stage.

*Finally*, Ms. Bergado's unjust-enrichment and quantum-meruit claims are not preempted by either federal or state law—in fact, the defendants' pre-emption arguments have been rejected by several courts.

## II.   **The Defendants' Motion Should Be Denied.**

In resolving a motion to dismiss for failure to state a claim, every fact alleged in the complaint is accepted as true, and all inferences are drawn in the light most favorable to the plaintiff. *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). The motion should be denied if the Court, "draw[ing] on its judicial experience and common sense," concludes that the complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In undertaking that analysis,

1   "the complaint should be read as a whole, not parsed piece by piece to determine

2   whether each allegation, in isolation, is plausible." *Lorenz v. Safeway, Inc.*, 241 F.

3   Supp. 3d 1005, 1023 (N.D. Cal. 2017) (citing *Braden v. Wal-Mart Stores, Inc.*, 588

4   F.3d 585, 594 (8th Cir. 2009)).

5     **A.**  **The Defendants Cannot Assert A Statute-Of-Limitations Defense**

6       **To Any Claim In This Case.**

7      The defendants contend that several of Ms. Bergado's causes of action—in

8   particular, breach of contract, fraud, conversion, and possibly quantum meruit—are

9   time-barred. *See* Mot. at 5, 7–8. Evidently the defendants believe Ms. Bergado

10  should have filed a lawsuit against them while they were keeping her isolated, in

11  captivity, working over a hundred hours per week. Setting aside the breathtaking

12  cruelty implied by that argument, it is flat wrong on the law.

13     Under the California Trafficking Victims Protection Act, the statutes of

14  limitations for any "claims arising out of the trafficking situation" are tolled until a

15  victim is freed. Cal. Civ. Code § 52.5(d)(4); *see also* Hon. Zerne P. Haning, et al.,

16  Cal. Practice Guide: Personal Injury § 5:197.18d (The Rutter Group 2017)

17  (explaining that, under Section 52.5, "the limitations period is suspended if

18  plaintiff *could not have reasonably discovered the cause of action due to*

19  *circumstances resulting from the trafficking situation*, such as psychological trauma,

20  cultural and linguistic isolation, and inability to access services") (emphasis in

21  original). Ms. Bergado filed this suit less than a year after her escape—well within

22  the statutes of limitations for all of her causes of action. *See* Compl. ¶ 2(1), 39(1).

23     Even if the California legislature hadn't expressly foreclosed the defendants'

24  argument, there would be ample grounds to equitably toll the initiation of the

25  limitations period until Ms. Bergado's escape. *Stoll v. Runyon*, 165 F.3d 1238, 1242

26  (9th Cir. 1999), *as amended* (Mar. 22, 1999) ("Equitable tolling applies when the

27  plaintiff is prevented from asserting a claim by wrongful conduct on the part of the

28

defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time.").[2]

In jurisdictions outside of California where there is no statute expressly tolling the statute of limitations for trafficking victims, multiple courts have applied equitable tolling when a trafficking victim files suit against her traffickers. *See, e.g.*, *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 119–20 (D.D.C. 2012) (equitably tolling the statutes of limitations on a trafficking victim's unjust-enrichment, tort, and breach-of-contract claims until the date the "plaintiff was free from the defendants' control and able to assert her legal rights"); *Deressa v. Gobena*, No. 05-1334, 2006 WL 335629, at *3–4 (E.D. Va. Feb. 13, 2006) (tolling the statute of limitations in a trafficking case because the defendants' actions, including confiscating the plaintiff's passport, threatening her with deportation, and misleading her about her salary, were "affirmative acts designed to prevent Deressa from obtaining her wages or taking steps to enforce her contractual and common law rights").

Here, Ms. Bergado's inability to file suit sooner was a direct result of the defendants' misconduct—refusing to let her leave the apartment, limiting her phone use, confiscating her passport, threatening her with imprisonment if she was discovered, intentionally exploiting her limited knowledge of English and the United States, and misleading her about her rights and her salary, among other things. Compl. ¶¶ 20(1)–22(1), 24(1), 27(1)–31(1). The statute of limitations should be

---

[2] Given the applicability of multiple tolling doctrines, the defendants' statute-of-limitations argument is particularly inappropriate for resolution in their favor on a motion to dismiss. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (Rule 12 dismissal on limitations grounds is only appropriate "'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled'") (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).

equitably tolled until Ms. Bergado's escape. *See Kiwanuka*, 844 F. Supp. 2d at 119–20; *Deressa*, 2006 WL 335629, at *3–4.

Finally, the defendants are also equitably estopped from asserting a statute-of-limitations defense. "Equitable estoppel is wholly independent of the limitations period itself and takes its life from the equitable principle that no man may profit from his own wrongdoing in a court of justice." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383–84 (2003), *as modified* (Aug. 27, 2003) (alterations and citation omitted).[3] Particularly at the motion-to-dismiss stage, when all of the allegations in the complaint are taken as true, permitting the defendants to seek the shelter of a statute-of-limitations defense would plainly permit them to benefit from their own wrongdoing. *See id*.; *see also* 3 Witkin, Cal. Proc. 5th Actions § 777 (2008) ("[I]t is well settled" that a defendant may not rely upon the statute of limitations as a defense "where the delay in filing was induced by his actions.").

## B.     The Complaint Sufficiently Pleads Forced-Labor Claims Under The TVPA Against Dr. Cadaoas and Mr. Orqueza.

With respect to Ms. Bergado's second cause of action, the defendants contend that Ms. Bergado has not stated a forced-labor claim against either Dr. Cadaoas or Mr. Orqueza because neither of them "'forced' Ms. Bergado to do anything, or in any way benefitted economically from her labor." Mot. at 3. The statute does not require these defendants to have forced Ms. Bergado to do anything, and the complaint adequately pleads they benefitted economically from her labor.

Under the Trafficking Victims Protection Act ("TVPA"), anyone who "knowingly obtains the labor or services of a person by . . . any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform

---

[3] Thus, "equitable estoppel is available even where the limitations statute at issue expressly precludes equitable tolling." *Id*. at 384.

such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589; *see also* 18 U.S.C. § 1595. A claim also arises against any party who "knowingly benefits financially from participation in a venture which that person knew or should have known has engaged in an action in violation" of the TVPA. 18 U.S.C. § 1595(a); *see infra* § II(D).

Both Dr. Cadaoas and Mr. Orqueza "obtain[ed] the labor or services" of Ms. Bergado under circumstances that caused Ms. Bergado to believe that, if she "did not perform such labor or services," she "would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a). For example, she "often cooked for Dr. Cadaoas's adult son . . . and Mr. Orqueza's family," yet she "never received any remuneration from them." Compl. ¶ 24(1). In addition, once Ms. Velonza decided that Ms. Bergado had to start working for Dr. Cadaoas, she "was assigned to clean up" after Dr. Cadaoas's son, who shared an apartment with Mr. Orqueza. *Id.* ¶ 35(1). All of that labor took place under the years-long involuntary servitude that Ms. Bergado was forced into, during which time she was repeatedly abused and threatened. *Id.* ¶¶ 1(1), 24(1)–36(1).

The complaint likewise pleads facts supporting the inference that both Dr. Cadaoas and Mr. Orqueza knowingly benefited from participation in a venture that they knew or should have known violated the TVPA. The complaint alleges that Dr. Cadaoas directly benefited from Ms. Bergado's forced labor. For example, during her fifteen-hour workdays, Ms. Bergado helped care for Dr. Cadaoas's son, who lived in the same apartment complex as the Velonzas. Compl. ¶ 24(1). She often prepared his meals and cleaned his room. *Id.* ¶¶ 24(1), 35(1). It also alleges that Dr. Cadaoas knew or should have known about Ms. Bergado's situation and helped the Velonzas cover it up. Dr. Cadaoas, who is Mrs. Velonza's sister, did not generate any medical records when she treated Ms. Bergado's tooth, because she did not want anyone to learn Ms. Bergado's identity or about the conditions under which she was

kept. *Id.* ¶ 34(1). These facts, taken as true, state a plausible claim against Dr. Cadaoas. *Barker*, 584 F.3d at 824.

With respect to Mr. Orqueza—Ms. Velonza's brother—the complaint alleges that he directly benefited from Ms. Bergado's forced labor. Compl. ¶ 24(1). For example, she often cooked meals for him and his family. *Id*. When Ms. Bergado, desperate and scared, told Mr. Orqueza that she could not "stand it here anymore," Mr. Orqueza dismissed her and told her to "put up with it," *id.* ¶ 37(1), and blocked the gate so that she could not leave. *Id.* ¶ 114(2). Since he lived in the same apartment complex as Ms. Velonza and Ms. Bergado, was related to Mrs. Velonza, took advantage of Ms. Bergado' unpaid labor for the benefit of himself and his family, and on at least one occasion, prevented Ms. Bergado from leaving the Velonzas, the complaint sufficiently provides a factual basis to conclude that Mr. Orqueza knew, or should have known, about and benefitted from Ms. Bergado's situation. *See Barker*, 584 F.3d at 824.

**C.    The Complaint Sufficiently Pleads A Peonage Claim Against Dr. Cadaoas.**

With respect to Ms. Bergado's fifth cause of action, the defendants contend that Ms. Bergado failed to state a peonage claim against Dr. Cadaoas.[4] Defendants' argument has no merit.

It is unlawful to hold any person in "a condition of peonage." 18 U.S.C. § 1581. "Peonage" is "a status or condition of compulsory service, based upon the indebtedness of the peon to the master . . . . The peon can release himself therefrom . . . by the payment of the debt, but otherwise, the service is enforced." *Ellerbe v.*

---

[4] The defendants' motion seeks to dismiss this cause of action as to both Dr. Cadaoas and Mr. Orqueza. Mot. at 3. It was not alleged against Mr. Orqueza. Compl. ¶¶ 66(1)–71(1).

*Howard*, No. 86-957, 1989 WL 64156, at *3 (W.D.N.Y. June 13, 1989) (quoting *Clyatt v. United States,* 197 U.S. 207, 215 (1905)).

The complaint alleges that Ms. Bergado performed compulsory services for Dr. Cadaoas in order to pay an alleged debt. Specifically, in early 2015, Ms. Bergado developed a severe toothache that persisted for many months. Compl. ¶ 34(1). By November, the pain was so intense that she was "weak and could not stop crying." *Id*. At that point, the Velonzas took Ms. Bergado to Dr. Cadaoas, who performed an emergency root canal. *Id*. As the complaint explains, Dr. Cadaoas did not generate any medical records, because she did not want anyone to learn Ms. Bergado's identity or about the conditions under which she was kept. *Id.*

Afterwards, Ms. Velonza told Ms. Bergado that she owed Dr. Cadaoas $2,800 for the root canal, and made her pay her debt by cleaning up after Dr. Cadaoas's adult son. Compl. ¶ 35(1). The complaint expressly alleges that Dr. Cadaoas was aware of this arrangement: "Edelynne learned from Mrs. Velonza that Dr. Cadaoas was aware of the arrangement and on one occasion Dr. Cadaoas acknowledged the arrangement during a conversation with Edelynne." *Id*.[5] Taking all of that as true, and drawing every inference in Ms. Bergado's favor, *see Barker*, 584 F.3d at 824, provides a more than sufficient factual basis to find Dr. Cadaoas liable for peonage.

**D.    The Defendants Violated The TVPA By Knowingly Benefitting From Ms. Bergado's Servitude.**

The defendants argue that Ms. Bergado's sixth cause of action—alleging that they knowingly benefitted from her servitude—should be dismissed because a

---

[5] Defendants suggest that Dr. Cadaoas didn't actually benefit from this arrangement because she "ceased having any responsibility for her adult son once he turned 18." Opp. at 1–2. There is no support for that statement, even if it did supply a basis for dismissal.

knowing benefit is a remedy, and "a remedy is not a cause of action." Mot. at 3–4. Their argument is confusing.

The TVPA permits a trafficking victim to "bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPA])." 18 U.S.C. § 1595(a); *see also Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (Souter, J.) (reversing an order dismissing the plaintiff's TVPA claim, which alleged that motel owners knowingly benefitted from her trafficking by collecting rent for the space where she was kept).

That is, that Section authorizes a plaintiff to bring TVPA claims against knowing beneficiaries of their trafficking—exactly what Ms. Bergado has done here. As the complaint details at length, all of the defendants received the benefits of Ms. Bergado's labor, under circumstances in which they either knew or recklessly disregarded the possibility that she was a trafficking victim. Compl. ¶¶ 72(1)–76(1). According to Section 1595(a), they are all liable for that conduct.

E.     **Ms. Bergado Was Not Required To Attach A Written Contract To Her Complaint.**

A plaintiff alleging a breach-of-contract claim does not need to append the contract to her complaint. *Melendez v. U.S. Bank Nat'l Ass'n*, No. 15-8633, 2016 WL 446528, at *4 (C.D. Cal. Feb. 2, 2016) (citing *Valdez v. J.P. Morgan Chase Bank, N.A.*, No. 11-935, 2012 WL 995278, at *6 (C.D. Cal. Mar. 20, 2012)). Instead, all the plaintiff must do is allege the "relevant terms" of the contract. *See, e.g.*, *Williams*, 2010 WL 1644888, at *6.

Here, Ms. Bergado alleges that she was induced to sign a written agreement for a specified salary ($8 per hour, with overtime), for a designated time period (six months), for specific work (to accompany and to be a caregiver to Ms. Velonza's mother). Compl. ¶ 18(1). Upon her arrival in the United States, the defendants

spectacularly breached that agreement, paying her essentially nothing for years of work that went far beyond the contract. *See, e.g.*, Compl. ¶¶ 24(1), 28(1), 31(1), 38(1). That is a plausible claim for breach of contract.

The defendants' contention that the contract must be attached is based on a case that was overruled by the California Supreme Court over a decade ago. *See Constr. Protective Servs., Inc. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189, 198–99 (2002) ("In an action based on a written contract, a plaintiff may plead the legal effect of the contract rather than its precise language."); *see also Melendez*, 2016 WL 446528, at *4 n.3 (explaining that *Harris*, the case relied upon by defendants, is "unpersuasive in light of the California Supreme Court's more recent holding" in *Construction Protective Services*). In any event, California-state pleading requirements are not applicable in federal court, since the pleading standards here are governed by the Federal Rules of Civil Procedure. *Melendez*, 2016 WL 446528, at *4 n.3.

## F.   Ms. Bergado's Fraud Claim Is Sufficiently Pled.

The defendants contend that Ms. Bergado's fraud claim is not pled with sufficient particularity or fails for other reasons. Mot. at 5–6. We'll take their argument point-by-point.

- "Here it is utterly unclear what misrepresentations form the basis of the Cause for Fraud." Mot. at 6. Not true. Ms. Bergado plainly alleges that, prior to her departure from the Philippines, the Velonzas misrepresented the salary they would pay her upon her arrival in the United States, that they would help her obtain a green card, and the nature of the work that would be required of her. Compl. ¶¶ 17(1)–18(1), 25(2).

- "If oral, the Cause fails. Having alleged the terms and conditions of her employment were subsequently reduced to a written contract, Ms. Bergado could not have justifiably relied upon prior oral statements." Mot. at 6. That's

inaccurate as well. California law is clear that reducing an agreement to writing—even if there's an integration clause—doesn't prohibit a party from maintaining a fraudulent-inducement claim. *See, e.g.*, *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App. 4th 985, 995 (1995) (noting the "the well-settled rule that parol evidence is admissible to prove fraud in the inducement 'even though the contract recites that all conditions and representations are embodied therein'") (citing *Ferguson v. Koch*, 204 Cal. 342, 347 (1928)).

- "If the written contract is the basis, failure to perform is a breach of contract and not a cause for fraud. Since those allegations are all incorporated into the Fraud Cause (Par. 24(2))." Mot. at 6. This is wrong too. There are multiple fraud theories that can be premised on the violation of a promise, even if it is reduced to a contract. *Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1453 (2011) (describing the elements of promissory fraud); *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (describing fraud in the inducement); *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1129 (2014) (describing fraudulent concealment), *as modified on denial of reh'g* (Feb. 27, 2014). Any of those legal theories would be available to Ms. Bergado.

## G.     The Complaint Adequately Pleads Negligent Infliction Of Emotional Distress.

The defendants contend that Ms. Bergado's twentieth cause of action—for negligent infliction of emotional distress—must be dismissed because it is "not a cause of action in California." Mot. at 6. Defendants have misunderstood the law. Negligent infliction of emotional distress is a specific iteration of the general tort of negligence, with the added requirement that a plaintiff demonstrate that she suffered emotional harm due to the defendants' actions. *See Burgess v. Superior Court*, 2 Cal.

4th 1064, 1073 (1992); Hon. Zerne P. Haning, et al., Cal. Practice Guide: Personal Injury § 3:793 (The Rutter Group 2017).

To the extent defendants are suggesting that Ms. Bergado's negligent-infliction-of-emotional-distress claim should not have been pled separately, they are incorrect. Because there is a supplemental burden of showing emotional harm, a negligent-infliction-of-emotional-distress claim is routinely pled apart from a run-of-the-mill negligence claim, and courts analyze it separately. *See, e.g.*, *Dang v. City of Garden Grove*, No. 10-0338, 2011 WL 3419609, at *12 (C.D. Cal. Aug. 2, 2011) (denying the defendant's motion for summary judgment on a negligent-infliction-of-emotional-distress claim because "a reasonable jury could conclude that Plaintiffs have proven the elements of this claim"). Such alternative statements of a claim are expressly permitted by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense *or in separate ones*. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.") (emphasis added).

### H. The Complaint Properly States Negligence Claims.

The defendants' only complaint about Ms. Bergado's twenty-first and twenty-second causes of action for negligence and negligence per se is that they incorporate all of the allegations made prior to them by reference, including the ones alleging intentional conduct. Mot. at 7. This is not a basis for dismissal. The purpose of a complaint is to put the defendants on notice of the claims against them and the grounds on which those claims rest. *See Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990). Defendants do not contend they are confused by Ms. Bergado's negligence claims or lack notice of them. Moreover, the allegations in a complaint need not be consistent with one another. Fed. R. Civ. P.

---

8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

## I.   There Is No Basis To Dismiss Ms. Bergado's Conversion Claim.

Although they neglected to brief the issue, the defendants' notice of motion suggests that Ms. Bergado failed to state a claim for conversion because the Velonzas no longer have possession of her passport and she never demanded return of the other items.[6] This argument is waived because it was not addressed in the defendants' memorandum of points and authorities. *See Larin Corp. v. Mueller*, 364 F. App'x 380, 383 (9th Cir. 2010) (a "passing assertion" undeveloped with "argument or authority" is waived).

In any event, a plaintiff alleging conversion is not required to plead that she made a demand for the converted goods, nor does the claim require that the converted items still be in the defendants' possession at the time of suit. *Enter. Leasing Corp. v. Shugart Corp.*, 231 Cal. App. 3d 737, 748 (1991) ("In a conversion action the plaintiff need show only that he was entitled to possession at the time of conversion; the fact that plaintiff regained possession of the converted property does not prevent him from suing for damages for the conversion."); 14A Cal. Jur. 3d Conversion § 56 (2018 ed.) ("No demand for return of the property is necessary as a condition precedent to a conversion action if the defendant's acts in relation to the property show conversion.") (citing *Weinberg v. Dayton Storage Co.*, 50 Cal. App. 2d 750 (1942)).

---

[6] The only issue the defendants briefed is their contention that the conversion claim is barred by the statute of limitations. Their argument fails for the reasons discussed in section II(A).

### J.      The Complaint Sufficiently Pled A False-Imprisonment Claim Against Mr. Orqueza.

To establish that she was falsely imprisoned, a plaintiff must show the "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Scofield v. Critical Air Med., Inc.*, 45 Cal. App. 4th 990, 1001 (1996). Notably, the "only mental state required to be shown to prove false imprisonment is the intent to confine," which "does not entail an intent or motive to cause harm." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 716 (1994). Physical force is not required—words or conduct leading to a reasonable apprehension that the detained person will not be allowed to leave are sufficient. *Schanafelt v. Seaboard Fin. Co.*, 108 Cal. App. 2d 420, 423 (1951).

Whether or not a defendant's conduct would have "furnished a reasonable apprehension on the part of the one restrained that she would not be allowed to depart" is a question for the jury and generally is not decided on a motion to dismiss or for summary judgment. *See, e.g.*, *Van v. Wal-Mart Stores, Inc.*, 583 F. App'x 761, 764 (9th Cir. 2014) (holding that a jury could find that a security guard standing in the way of a door could create a reasonable apprehension in the plaintiff).

Courts have routinely held that trafficking victims can state false-imprisonment claims, even without alleging force or a threat of force. For example, in *Baxla v. Chaudhri*, the court denied a motion to dismiss a false-imprisonment claim where the defendants threatened to report a trafficking victim to immigration or police officers. 225 F. Supp. 3d 588, 595 (E.D. Va. 2016). The court rejected the defendants' arguments that the plaintiff's "false imprisonment claim should be dismissed because they never threatened to use force directly against her" and that the plaintiff hadn't been falsely imprisoned because she "voluntarily return[ed] to [the] defendants' home" when she reasonably feared that force would be used against her. *Id.*; *see also Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 456–57 (E.D.

Va. 2015) (a plaintiff can "demonstrate[] that defendants intentionally restricted her freedom, movement, and physical liberty . . . by confining her to [their] residence[s] . . . through the use of words and acts, including confiscating her identification documents and denying her access to anyone who could help her out of the situation).

Here, the complaint plausibly alleges that Mr. Orqueza created a reasonable apprehension by Ms. Bergado that she would not be allowed to depart the Velonza's apartment building. Ms. Bergado was also working for Mr. Orqueza, he knew about her forced servitude, and he was living in the building where she was being kept. *Id*. ¶ 24(1). He thwarted her attempted escape by "physically placing himself between Edelynne and the property gate" and telling her "You have to put up with it." *Id*. ¶ 37(1). A reasonable person in Ms. Bergado's position, who had suffered the years of the emotional trauma and isolation the defendants inflicted on her, would certainly have concluded that he or she was confined. Compl. ¶ 37(1). Ultimately, whether Ms. Bergado's fear was "reasonable" is a question of fact for the trier of fact. *See Van*, 583 F. App'x at 764. The motion to dismiss should be denied.

## K.   Ms. Bergado's Quantum-Meruit And Unjust-Enrichment Claims Are Adequately Pled.

The defendants have made separate arguments about Ms. Bergado's quantum-meruit and unjust-enrichment claims. We take each in turn.

### 1.   Duplication Is Not A Basis For Dismissal.

Defendants argue that because Ms. Bergado's quantum-meruit and unjust-enrichment claims seek similar remedies, at least one must be dismissed "on that basis alone." *See* Mot. at 10. But duplication is not a ground for dismissal. In *Astiana v. Hain Celestial Group., Inc.*, the Ninth Circuit, applying California substantive law, reversed a district court's order dismissing a quasi-contract cause of action as "duplicative" of other claims brought by the plaintiff. 783 F.3d 753, 762 (9th Cir. 2015). The Ninth Circuit held that "[t]o the extent the district court concluded that

the cause of action was nonsensical because it was duplicative of or superfluous to [plaintiff's] other claims, this is not grounds for dismissal." *Id.* (citing Fed. R. Civ. P. 8(d)(2)); *see also In re Trader Joe's Tuna Litig.*, No. 16-1371, 2017 WL 4442918, at \*12 (C.D. Cal. Oct. 3, 2017) ("[A] duplicative cause of action is not grounds for dismissal."). Therefore, even if Ms. Bergado's quantum-meruit and unjust-enrichment claims seek similar remedies, this is not a basis for dismissal.[7]

### 2.   The Claims Are Not Preempted By Federal Law.

The defendants also argue that these causes of action are preempted by federal and state law. The contention is meritless.

As for federal law, the defendants contend that Ms. Bergado's claims are preempted by the Fair Labor Standards Act. Mot. at 9. The Ninth Circuit has "never held that FLSA preempts a state-law claim." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 759 (9th Cir. 2010), *vacated and remanded for reconsideration on other grounds by* 565 U.S. 801 (2011); *see also Carrillo v. Schneider Logistics, Inc.*, No. 11-8557, 2013 WL 12124123, at \*5 (C.D. Cal. May 13, 2013) (noting that, in general, "FLSA should not be interpreted to preempt [state law] claims," because "state law claims duplicating the FLSA do not interfere with the congressional purpose of protecting employees").

Every preemption inquiry starts with the assumption that Congress did not intend to displace state law. *See English v. Gen. Elec. Co.,* 496 U.S. 72, 87 (1990) ("[T]he mere existence of a federal regulatory or enforcement scheme"—even if the scheme is an appreciably detailed one—"does not by itself imply preemption of state

---

[7] Slight differences exist with respect to how the elements for each cause of action are set forth in California. *Compare* 4 Witkin, Cal. Proc. 5th Pleadings § 566 (2008) (quantum meruit), *with* 1 Witkin, Summary 11th Contracts § 1050 (2017) (unjust enrichment).

remedies."). Courts will only dismiss state-law claims as preempted by federal law upon a clear finding that there is:

(1) *express preemption*—"where Congress explicitly defines the extent to which its enactments preempt state law";

(2) *field preemption*—"where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy"; or

(3) *conflict preemption*—"where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

In the context of the FLSA, only "conflict preemption" warrants consideration, since the Ninth Circuit has clearly held that "[t]here is definitely no express or field preemption" imposed by the FLSA. *Williamson*, 208 F.3d at 1153. The issue, then, is whether California common law, as Ms. Bergado seeks "to apply it in this case, 'stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.'" *Carrillo*, 2013 WL 12124123, at *3 (quoting *Indus. Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997)). The defendants have not attempted to explain how allowing Ms. Bergado's quantum-meruit and unjust-enrichment claims to proceed would enact an obstacle to Congress's purpose in enacting FLSA. *See id*. It plainly would not. Congress's purpose in enacting FLSA was to ensure the protection of employees. *Id*. at *5 (collecting cases); *see also Williamson*, 208 F.3d at 1154 ("[T]he Supreme Court and the Ninth Circuit have consistently found that the central purpose of the FLSA is to enact minimum wage and maximum hour provisions designed to protect employees."). "It may be true that the remedies Congress set out in the FLSA are the only remedies Congress intended to apply in every state, but Congress explicitly

---

OPPOSITION TO MOTION TO DISMISS

18

2659833.7

allowed each state to augment the FLSA's protections with its own laws." *Carrillo*, 2013 WL 12124123, at *6.

Instead, the only argument advanced in the defendants' motion is a categorical statement that "[s]tate common law '[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA.'" Mot. at 9 (quoting *Williamson*, 208 F.3d at 1159). However, that dictum from *Williamson* has since been rejected by the Ninth Circuit, as acknowledged by multiple courts.

In *Wang*, the Ninth Circuit noted the confusion *Williamson* had created by "suggest[ing] in dicta that 'claims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA.'" 623 F.3d at 759. The *Wang* Court reached the opposite conclusion—holding that a Section 17200 claim that duplicated the plaintiffs' FLSA claim was not preempted. at 759–60.[8] Several cases have noted the Ninth Circuit's rejection of that portion of *Williamson*. *Carrillo*, 2013 WL 12124123, at *5 ("*Wang* concludes that since state law claims duplicating the FLSA do not interfere with the congressional purpose of protecting employees, the FLSA should not be interpreted to preempt such claims."); *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 466 (E.D.N.Y. 2011) ("To the extent that *Williamson* is distinguishable because it does not involve a common law claim directly implicating the overtime wage provisions of the FLSA, the Ninth Circuit recently clarified the applicability of *Williamson* to all common law claims in [*Wang*]."); *see also Ribot v. Farmers Ins. Grp.*, No. 11-2404, 2011 WL 13128072, at *6 (C.D. Cal. Nov. 23, 2011) (noting that "since *Wang*, no Ninth Circuit district court has found a state law claim preempted by FLSA").

---

[8] Making matters worse for the defendants, the Ninth Circuit explicitly rejected *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), another case they rely on here. *Wang*, 623 F.3d at 760 ("We find *Anderson* unpersuasive."); Mot. at 9 (citing *Anderson*).

For these reasons, the Court should deny defendants' motion to dismiss Ms. Bergado's quantum-meruit and unjust-enrichment claims as preempted by the FLSA.[9]

### 3.   The Claims Are Not Preempted By State Law.

As for California preemption, the defendants claim that Ms. Bergado's unjust-enrichment and quantum-meruit claims are preempted by the California Labor Code under the "new right-exclusive remedy" doctrine. *See* Mot. at 9–11. This argument fares no better.

Under California's "new right-exclusive remedy" doctrine, when a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is "exclusive." *Rojo v. Kliger*, 52 Cal. 3d 65, 79 (1990). Conversely, when a statutory remedy is provided for a preexisting common-law right, the newer remedy is generally considered to be "cumulative," and the older remedy may be pursued at the plaintiff's election. *Id.*

Here, the defendants characterize Ms. Bergado's quantum-meruit and unjust-enrichment claims as seeking wages owed under the California Labor Code and argue that because the California Labor Code created rights not available under common law—a minimum wage—Ms. Bergado's claims are preempted under the "new right-exclusive remedy" doctrine. However, those claims do not seek unpaid *wages*. Rather, they are quasi-contract claims that seek restitution and recourse for

---

[9] To the extent there is any uncertainty regarding the issue of whether or not Ms. Bergado's common-law claims are preempted by FLSA, the question should be deferred until they are "fleshed out during the course of discovery." *Taylor v. Trojan Labor of Nashville, LLC*, No. 13-00120, 2013 WL 1826450, at *2 (M.D. Tenn. Apr. 30, 2013) ("This Court will not wade into the thicket at this time and issue a ruling which may be more broad than necessary to determine whether, under the facts that will be fleshed out during the course of discovery in this case, Plaintiffs' claim for unjust enrichment is preempted by the FLSA.").

defendants' unjust enrichment—quintessential claims at common law not subject to California's "new right-exclusive remedy" doctrine.

The defendants' precise argument has already been rejected by the courts. For example, in *Sims v. AT&T Mobility Services LLC*, the court concluded that although the California Labor Code established "minimum wages for regular compensation and overtime compensation," an employee was traditionally "entitled to recover a reasonable amount for labor performed in quantum meruit" at common law. 955 F. Supp. 2d 1110, 1117 (E.D. Cal. 2013). The court explained that the Labor Code's minimum-wage and overtime provisions "defined what that reasonable amount was," but they "did not create the underlying right of an employee to be paid at a fair rate for his labor or the right of that employee to sue for reasonable compensation if he was not." *Id.* Accordingly, the court concluded, "any cause of action in the Labor Code to recover unpaid wages is cumulative with those that exist at common law" and is therefore not preempted under the "new right-exclusive remedy" doctrine. *Id.*

The Court should deny the defendants' motion to dismiss Ms. Bergado's quantum-meruit and unjust-enrichment claims as preempted under the "new right-exclusive remedy" doctrine.

## L.    If The Court Dismisses Any Claim, Leave To Amend Should Be Granted.

As we've set out throughout this brief, the defendants' motion to dismiss is meritless. However, if the Court is inclined to grant the motion in any part, it should permit Ms. Bergado leave to amend. It is black-letter law that leave to amend is freely granted, and that the policy in favor of amendment is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

2659833.7

**III.** **No More Definite Statement Is Required.**

In their motion, the defendants make sporadic requests for an order compelling Ms. Bergado to provide a more definite statement. Rule 12(e) motions are disfavored, and are "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted and therefore cannot reasonably be expected to frame a proper response." *Miller v. City of Los Angeles*, No. 13-5148, 2014 WL 12610195, at *4 (C.D. Cal. Aug. 7, 2014) (citing *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011)). That is, the motion must be denied if "the complaint is specific enough to notify defendant of the substance of the claim being asserted." *Id.* (citing *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996)). The defendants have not even attempted to meet that standard—they don't so much as contend that they don't understand the substance of any of the causes of action against them. This alternative request should be denied.

**IV.** **Conclusion.**

The defendants' motion should be denied in its entirety.

Dated: February 12, 2018              Respectfully Submitted,

                                                          /s/ Amy M. Gallegos
                                                          Amy M. Gallegos

                                                          Attorneys for Plaintiff