**BARNHILL & VAYNEROV, LLP**
MAXIM VAYNEROV, SBN 177520
vaynerov@bv-llp.com
11400 W. Olympic Blvd., Ste 200
Los Angeles, California 90064
Telephone: (310) 943-8989
Facsimile: (310) 943-8998

**WALTON & WALTON, LLP**
L. RICHARD WALTON, SBN 226703
rwalton@taxtriallawyers.com
4640 Admiralty Way, 5th Floor
Marina del Rey, California 90292
Telephone: (310) 496-5835
Facsimile: (310) 464-3057

*Attorneys for All Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDELYNNE BERGADO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MARLON VELONZA; NELLE-ANN VELONZA; ETTA'S INTERNATIONAL COSMETICS; JOSEPHINE CADAOAS; and NELSON DOMINGUIANO ORQUEZA,<br><br>Defendants. | Case No. 17-cv-9070<br><br>*Assigned for All Purposes to the Hon. James v. Selna, United States District Judge*<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT (FED. R. CIV. PROC. 12(B)(6))**<br><br>Date: March 5, 2018<br>Time: 1:30 p.m.<br>Dept: 10C<br><br>Action Filed: December 19, 2017 |

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

# Table of Contents

I.   Forced Labor (Second COA) Fails Against Cadaoas & Orqueza ...............1

II.  Peonage (5th COA) Fails Against Cadaoas & Orqueza ...............................1

III. TVPA Violations Only Allow a Civil Claim Under Section 1595 ...............2

IV.  BREACH OF CONTRACT (COA 10) & FRAUD (COA 11) FAIL ...........3

    A.   Breach of Contract Fails: The Velonza Defendants were Not Parties ...............................................................................................3

    B.   Fraud Fails: A Breach of Contract is Not Tortious Fraud ...............3

    C.   Breach of Contract and Fraud are Time Barred ...............................4

        1.   Civ. Code § 52.5(d)(4) Does not Suspend the Statute ..................4

        2.   California law does not permit equitable tolling for either Cause ...............................................................................................5

        3.   Equitable Estoppel Likewise Does Not Apply ...........................5

V.   NIED (20th COA) Is Not a Tort and Must be Dismissed ...........................8

VI.  Intentional Conduct Dooms Causes 21 & 22 ....................................9

VII. Conversion (25TH COA) Fails.................................................................10

VII. False Imprisonment Fails Against Orqueza ...............................11

VIII. FLSA Preempts State Common Law Claims ...............................12

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

# Table of Authorities

**CASES**

Anderson v. District Bd. of Trustees of Cent. Florida Community College, 77
    F.3d 364, 366 (11th Cir. 1996) ..........................................................................10

Battuello v. Battuello, 64 Cal. App. 4th 842 (1998)......................................................6

Burgess v. Superior Court,  2 Cal.4th 1064, 1072 (1992) ............................................8

Burgess v. Superior Court, 2 Cal. 4th 1064, 1073 (1992) ............................................9

Byrne v. Nezhat, 261 F.3d 1075, 1129–1130 (11th Cir. 2001)......................................9

Carrillo v. Schneider Logistics, Inc., 2013 WL 12124123, at *5 (C.D. Cal.
    2013) .................................................................................................................14

Christensen v. Superior Court, 54 Cal.3d 868, 884 (1991) ...........................................8

Clyatt v. U.S., 197 U.S. 207 (1905).............................................................................1

Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir. 1980) ...................7

Dang v. City of Garden Grove, 2011 WL 3419609, at *12 (C.D. Cal. 2011) ..............9

DC Comics v. Pacific Pictures Corp., 938 F. Supp. 2d 941 (C.D. Cal. 2013)..............5

Destfino v. Kennedy, 2009 WL 63566, at *4 (E.D. Cal. 2009) ...................................9

Destfino v. Reiswig, 630 F.3d 952 (9th Cir. 2011) ......................................................9

Duste v. Chevron Products Co., 738 F.Supp.2d 1027, 1040 (N.D. Cal. 2010).............8

Fermino v. Fedco, Inc., 7 Cal. 4th 701, 715 (1994)....................................................11

Green v. Party City Corp., 2002 WL 553219, at *5 (C.D. Cal. 2002) .......................15

Guerrero v. Gates, 442 F.3d 697, 706-07 (9th Cir. 2006) ...........................................7

Hadland v. NN Inv'rs Life Ins. Co., 24 Cal. App. 4th 1578, 1588-89 1994)................3

Helm v. Alderwoods Group, Inc., 696 F.Supp.2d 1057, 1075 (N.D. Cal. 2009)........12

Honeywell v. Workers' Comp. Appeals Bd., 35 Cal.4th 24, 37 (2005) .......................7

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

_Igauye v. Howard_, 114 Cal.App.2d 122, 127 (1952) ................................................10

_In re Jeffrey M._, 141 Cal. App. 4th 1017 (2006) ........................................................2

_In re Wal–Mart Stores, Inc. Wage & Hour Litig._, 505 F. Supp. 2d 609, 618–19
    (N.D. Cal. 2007) .................................................................................................15

_Industrial Indem. Co. v. Industrial Accident Comm._, 115 Cal. App. 2d 684, 690
    (1953)....................................................................................................................6

_Lawson v. Management Activities, Inc._, 69 Cal. App. 4th 652, 656-57 (1999) ...........9

_Lobrovich v. Georgison_,  144 Cal. App. 2d 567, 573-74 (1956) ..................................6

_Lopez v. Aerotek, Inc._, 2015 WL 4504691, at *3 (C.D. Cal. 2015) ...........................15

_Mills v. Forestex Co._ 108 Cal. App. 4th 625, 655-56 (2003)......................................6

_Mills v. Forestex Co._, 108 Cal.App.4th 625, 641 (2003) ...........................................7

_People v. Halim_, 14 Cal. App. 5th 632 (2017) ...........................................................5

_Polk v. Cavin_, 2009 WL 1176309, *1 (N.D. Cal. 2009) .............................................6

_Potter v. Firestone Tire & Rubber Co._ 6 Cal.4th 965, 984 (1993) ..............................8

_Rodriguez v. Cleansource, Inc._, 2015 WL 5007815, at *9 (S.D. Cal. 2015).............15

_Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp._, 32 Cal.
    App. 4th 985 (1995) ............................................................................................3

_Salazar v. County of Orange_, 2012 WL 12896196, * 2-3 (C.D. Cal. 2012)...............9

_Santa Maria v. Pac. Bell_, 202 F.3d 1170, 1176 (9th Cir.2000) ..................................7

_Santiago v. Amdocs, Inc._, 2011 WL 1303395, at *3 (N.D. Cal. 2011) .....................15

_Sims v. AT & T Mobility Servs. LLC_, 955 F. Supp. 2d 1110, 1116 (E.D. Cal.
    2013)..................................................................................................................15

_Spinks v. Equity Residential Briarwood Apartments_, 171 Cal. App. 4th 1004,
    1044-45 (2009) ...................................................................................................8

_Starr v. Baca_, 652 F.3d 1202, 1216 (9th Cir. 2011) ...................................................9

_Tri-Continent Int'l Corp. v. Paris Sav. and Loan Ass'n_, 12 Cal. App. 4th 1354
    (1993)..................................................................................................................3

**WALTON & WALTON LLP**
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

iv

Vandiveer v. Charters, 110 Cal. App. 347, 255-56 (1930) ..........................................11

Wang v. Chinese Daily News, Inc., 623 F.3d 743, 759-60 (9th Cir. 2010) ...............14

Williamson v. General Dynamics Corp., 208 F.3d 1144 (9th Cir. 2000) ...................12

## STATUTES

18 U.S.C. § 1546(a) ..................................................................................................5

18 U.S.C. § 1589 ........................................................................................................1

18 U.S.C. § 1595(a) ...........................................................................................1, 2, 3

29 U.S.C. § 206(f) ......................................................................................................5

Cal. Lab Code § 1198 ..............................................................................................16

Cal. Lab Code § 510 ................................................................................................16

Cal. Lab. Code § 1197 .............................................................................................16

Cal. Lab. Code § 203 ..........................................................................................16, 17

Cal. Penal Code § 236.1 ............................................................................................5

Civil Code § 52.5(a) ..................................................................................................4

Code Civ. Proc § 338(d) ...........................................................................................4

Code Civ. Proc § 339(1) ...........................................................................................4

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

DEFENDANTS' MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Forced Labor (Second COA) Fails Against Cadaoas & Orqueza

Plaintiff's recitation of facts she has not actually pled does not save this Cause from dismissal.  Central to any claim under TVPA is that the Defendant "knowingly" obtained labor or services with the "intent to cause the person to believe that [she] would suffer serious harm or physical restraint," *or* "benefit[ted] financially" from violation of the TVPA.  (18 U.S.C. §§ 1589, 1595(a)).

The Complaint pleads that Dr. Cadaoas provided a needed medical service, and (allegedly) did not keep a record of the service performed; Ms. Bergado allegedly provided services for Dr. Cadaoas' *adult son.*  (Cmpl. ¶¶ 34-35).  That does *not* lead to any inference other than she provided a service, and failed to keep records of the same.  Nor is there any legal inference to be drawn from services provided to Dr. Cadaoas' adult son, other than the fact that Plaintiff did so.  There are multiple "inferences" to be drawn from this fact—including basic human affection.  The facts against Mr. Orqueza are even weaker: he was "standing at the gate" and told Plaintiff "You are fortunate to be here."  (Cmpl. ¶ 37).

None of that proves any "knowing" receipt of labor or services, or "knowing" receipt of financial benefit, by either Defendant—let alone that either Defendant intended to cause Ms. Bergado to believe she would suffer serious harm or physical restraint.  Plaintiff acknowledges these defects, asking the Court to "infer" from the facts pled that the required pleading of facts to show knowledge and intent is present.  (Opp'n 7:17).  They are not, and this Cause should be dismissed—until and unless Plaintiff is willing to file a Rule 11-compliant pleading setting forth actual facts to support these required elements.

### II.   Peonage (5th COA) Fails Against Cadaoas & Orqueza

Again, Plaintiff's factual arrow flies far wide of the legal mark it is trying to hit: peonage only exists where one is performing a compulsory service to pay a debt owed to another.  (Clyatt v. U.S., 197 U.S. 207, 215 (1905)).  Pleading that Dr.

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

1

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

Cadaoas was aware that Plaintiff was doing things for her adult son in no way establishes that Plaintiff was paying off any debt owed to Dr. Cadaoas by providing such services.  Nowhere does Plaintiff plead that Dr. Cadaoas asked for this, derived any financial benefit from it, or reduced Plaintiff's alleged debt to her accordingly.  It is a legal fact easily amenable to judicial notice that children cease becoming the responsibility of their parents once they attain majority—and parental liability during minority is severely limited.  (*See, e.g.,* <u>In re Jeffrey M.</u>, 141 Cal. App. 4th 1017, 1026 (2006) ("parents are not ordinarily liable for the torts of their minor children.")).

Without pleading that she knowingly received some personal financial benefit for services performed for her adult son, this Cause fails and should be dismissed.

## III.  <u>TVPA Violations Only Allow a Civil Claim Under Section 1595</u>

Section 1595 of Title 18 allows a victim of alleged criminal conduct, as defined by other sections of the TVPA, to *also* file a civil suit against the alleged perpetrators.  Without section 1595, Ms. Bergado would be unable to maintain a civil claim against the Defendants for violations of the TVPA.  That accurate proposition does not justify Plaintiff's argument that this section, by itself, creates a separate cause of action apart from any violation of the substantive provisions of the TVPA is misplaced.

Section 1595 standing alone, without any other underlying violation of another section of the criminal provisions of the TVPA, is not a viable cause of action.  Authority?  Read the statute:  "(a) An individual who is a ***victim of a violation of this chapter may bring a civil action against the perpetrator*** (or whoever knowingly benefits…) in an appropriate district court of the United States…." (18 U.S.C. § 1595(a), emph. suppl.).  This language does not proscribe conduct, but merely allows someone aggrieved by a violation of a substantive TVPA provision to file a civil suit against those who transgress the other sections "of this chapter."

That is exactly what Plaintiff did here, and her relief will not be short-changed by dismissing this non-Cause of Action *with prejudice*.

<u>Ricchio v. McLean</u>, relied upon by Plaintiff, makes Defendants' point:

2

18 U.S.C. § 1595(a) is the civil remedy provision of the Trafficking Victims Protection Act:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees. (853 F.3d at 556, n. 2).

Exactly. Section 1595 creates no separate cause of action without an underlying violation of another section of the TVPA.

## IV.    BREACH OF CONTRACT (COA 10) & FRAUD (COA 11) FAIL

### A. <u>Breach of Contract Fails: The Velonza Defendants were Not Parties</u>

Plaintiff's quibbling over the pleading requirements for breach of contract misses the point: the material terms of the contract are not pled. Namely, the Complaint fails to plead that any of the Defendants were a party to this purported agreement. (<u>Tri-Continent Int'l Corp. v. Paris Sav. and Loan Ass'n</u>, 12 Cal. App. 4th 1354, 1359 (1993) ("[plaintiff] cannot assert a claim for breach of contract against one who is not a party to the contract")).

Plaintiff states the contract's purported terms, and claims that the Velonza Defendants drafted it. (Cmpl., ¶ 18.) Yet, Plaintiff carefully omits to plead the critical: the party who allegedly committed the breach was actually a party to the contract. Without that, the claim for a breach of written contract should be dismissed.

### B. <u>Fraud Fails: A Breach of Contract is Not Tortious Fraud</u>

Plaintiff's claim that the Eleventh Cause of Action can stand as a fraudulent inducement to enter into a contract is incorrect. While California law permits rescission based upon fraudulent inducement certain circumstances (*see*, *e.g.*, <u>Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.</u>, 32 Cal. App. 4th 985, 995 (1995)), alleged representations that conflict with the express terms of a written contract cannot form a basis of a fraud claim. (<u>Hadland v. NN Inv'rs Life Ins. Co.</u>, 24 Cal. App. 4th 1578, 1588-89 1994)). Reliance on representations conflicting with

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

3

"the express provisions of the written contract" was "unjustified as a matter of law." (Id.)

That is exactly what is alleged here. Plaintiff allegedly had two conversations in November to December of 2013, wherein the Velonzas purportedly orally offered Plaintiff terms of employment. (Cmpl., ¶¶ 16, 17.) Then, the terms of Plaintiff's alleged employment were reduced to a written contract: "Edelynne was to 'accompany and to be a caregiver to Felisa Velonza from March 29, 2014 to September 29, 2014.' The agreement stated that Edelynne would be paid $8.00 per hour for up to 8 hours per day, and $12.00 per hour for every hour of overtime." (Cmpl., ¶ 18). "Based on these representations, Edelynne agreed to come to California." (Cmpl. ¶ 18). As Plaintiff could not have, as a matter of law, justifiably relied on the prior alleged verbal representations, the cause of action for fraud based on these alleged verbal misrepresentations must fail.

As for the Velonza Defendants' alleged failure to abide by the terms of the purported written agreement, such failure is the quintessential claim for breach of contract, which cannot be transmogrified into the tort of fraud.

## C.    Breach of Contract and Fraud are Time Barred

Plaintiff's common law causes of action for breach of oral contract, implied or otherwise, and fraud accrued on April 6, 2014, the date upon which "Mr. Velonza also informed Edelynne that the contract she signed was not what they would follow." (Cmpl. ¶ 20). This is not disputed.  Thus, Plaintiff had two (2) years, until April 7, 2016, to file her claim for breach or oral or implied contract.  (Code Civ. Proc § 339(1).)  Plaintiff's time to file a claim for fraud expired a year later, on April 7, 2016. (Code Civ. Proc § 338(d).)

### 1.    Civ. Code § 52.5(d)(4) Does not Suspend the Statute

Section 52.5(d)(4) suspends the statute of limitations only "to all other related claims *arising out of the trafficking situation*." (Emph. suppl.). Civil Code section 52.5(a) provides victim of human trafficking a private right of action against those

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

4

1   who violate "Section 236.1 of the Penal Code."  Elements of the offense of human

2   trafficking under Cal. Penal Code section 236.1 are (1) the defendant either deprived

3   another person of personal liberty or violated that other person's personal liberty; and

4   (2) when the defendant did so, he or she intended to obtain forced labor or services

5   from that person.   (People v. Halim, 14 Cal. App. 5th 632, 643-44 (2017) ("Neither

6   making a false statement (18 U.S.C. § 1546(a)) nor failure to pay minimum wage (29

7   U.S.C. §§ 206(f), 215) is an element of section 236.1. These federal crimes do not

8   constitute the "same offense" as human trafficking charges …."")).

9        Plaintiff's causes of action for fraud and breach of contract, written, oral or

10  implied, do not "arise out of" the Velonza Defendants' alleged deprivation of

11  Plaintiff's "personal liberties" in violation of Cal. Civ. Code § 52.5.  To the contrary,

12  these claims matured upon Plaintiff's arrival in Los Angeles on April 6, 2014, when

13  she was purportedly told that the Velonza Defendants would not fulfill their

14  purported promises.  (Cmpl. ¶ 20).  Thus, Cal. Civ. Code § 52.5(d)(4) cannot suspend

15  the running of the statute of limitations on these claims.

16       **2.    *California law does not permit equitable tolling for either Cause***

17       As for equitable tolling, Plaintiff relies upon out of state decisions, applying

18  inapt law from other jurisdictions, to claim that equitable tolling saves Plaintiff's

19  breach of contract and fraud claims from being time barred.  (*See* Opp, at 5:3-14).

20       No such equitable tolling exists in California.  (DC Comics v. Pacific Pictures

21  Corp., 938 F. Supp. 2d 941, 950 (C.D. Cal. 2013)). "By expressly providing for the

22  common-law discovery rule and no other common-law tolling principles, section 339

23  appears to reflect the legislature's clear and unequivocal intent to preclude

24  application of common-law tolling mechanisms other than the discovery rule."  (Id.)

25       **3.    *Equitable Estoppel Likewise Does Not Apply***

26       Equitable estoppel theory here is equally unavailing to toll the statutes of

27  limitations.  Unlike equitable tolling, equitable estoppel does not "extend" a

28  limitations period, "but rather comes into play only after the limitations period has

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

5

run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period."  (Battuello v. Battuello, 64 Cal. App. 4th 842, 847 (1998)).

*First*, equitable estoppel cannot save Plaintiff's time barred claim for fraud, because Plaintiff had reasonable time, as a matter of law, to institute a timely fraud claim after the alleged circumstances causing her delay ceased.  Plaintiff cannot rely on equitable estoppel to overcome the statute of limitations if a "substantial period for instituting proceedings supervened after expiration of the delay engendered by [the defendant].... A party has a reasonable time in which to bring his action after the estoppel has expired."  (Industrial Indem. Co. v. Industrial Accident Comm., 115 Cal. App. 2d 684, 690 (1953); Lobrovich v. Georgison,  144 Cal. App. 2d 567, 573-74 (1956) ("ample time" of more than five weeks); Mills v. Forestex Co. 108 Cal. App. 4th 625, 655-56 (2003) (a year was ample time to file claim after plaintiffs stopped relying on defendant's promises); Polk v. Cavin, 2009 WL 1176309, *1 (N.D. Cal. 2009) (holding "application of the equitable estoppel doctrine does not appear to be warranted because the period during which plaintiff was allegedly subjected to duress … ended when she was transferred to state prison on February 27, 2007, approximately six months before the statute of limitations expired on August 29, 2007"; "no longer was in danger from … threats of harm … [plaintiff] could have timely filed her complaint."))

Here, Plaintiff's alleged fraud claim accrued on April 6, 2014, the date upon which "Mr. Velonza … informed Edelynne that the contract she signed was not what they would follow."  (Cmpl., ¶ 20). Thus, on its face, Plaintiff had three years, until April 7, 2017, to institute an action for fraud.  (Code Civ. Proc. § 338(d))   However the time where Plaintiff was subject to alleged duress, which purportedly prevented her from instituting this action, ended on January 12, 2017, when police officers came to the Velonzas' home, almost three (3) months before Plaintiff's three (3) year

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

statute of limitation on fraud expired; she nevertheless delayed filing this Complaint for an additional nine months.  (<u>Id.</u>)  As such, estoppel is not applicable or equitable.

*Second*, as to both the fraud and breach of contract claims, equitable estoppel cannot be applied to the facts as pled.

 "'Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) ***he must rely upon the conduct to his injury***.'" (Citations omitted and emphasis supplied.)

(<u>Honeywell v. Workers' Comp. Appeals Bd.</u>, 35 Cal.4th 24, 37 (2005); <u>Santa Maria v. Pac. Bell</u>, 202 F.3d 1170, 1176 (9th Cir.2000) ("***A finding of equitable estoppel rests on*** the consideration of a non-exhaustive list of factors, including: (1) ***the plaintiff's actual and reasonable reliance on the defendant's conduct*** or representations....")).

These facts must be pled with particularity if the Complaint, as here, appears on its face to be time barred.  (<u>Mills v. Forestex Co.</u>, 108 Cal.App.4th 625, 641 (2003); <u>Guerrero v. Gates</u>, 442 F.3d 697, 706-07 (9th Cir. 2006); <u>Conerly v. Westinghouse Elec. Corp.</u>, 623 F.2d 117, 120 (9th Cir. 1980) ("Under either California or federal authority, the plaintiff must plead with particularity the facts which give rise to the claim of fraudulent concealment")).  "The existence of such fraud must be alleged clearly and unequivocally and must not rest upon inferences." (<u>Conerly</u>, *supra,* 623 F.2d at 120).

Here, Plaintiff relies upon a plethora of Defendants' alleged misconduct to justify the delay of filing, including "refusing to let her leave the apartment, limiting her phone use, confiscating her passport, threatening her with imprisonment if she was discovered, intentionally exploiting her limited knowledge of English and the United States, and misleading her about her rights and her salary, among other things. Compl. ¶¶ 20(1)–22(1), 24(1), 27(1)–31(1)." (*See* Opp., at 5:15-20)  Yet the Opposition fails to mention the critical:  the Complaint alleges that a simple

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

7

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

1   Facebook post in early 2017, asking for help, led to her freedom, and purportedly the

2   filing of this action. (Cmpl., at ¶¶ 38-39)

3          Plaintiff apparently did not rely on any of Defendants' prior alleged

4   misconduct when, in early 2017, she asked a "friend" on Facebook for help. No

5   explanation is provided as to why Plaintiff failed to do the same at any time before

6   this.  As such, the Complaint fails to plead the requisite facts to support equitable

7   estoppel to the statute of limitations defense.   Accordingly, these causes are time

8   barred and should be dismissed.

9   **V.      NIED (20th COA) Is Not a Tort and Must be Dismissed**

10          Plaintiff asserts that the 20th COA for negligent infliction of emotional distress

11   may stand as an alternative, presumably to Plaintiff's 21st COA for Negligence and

12   22nd COA for Negligence per say.   Not so. "[U]nder California state law, there is no

13   independent tort of negligent infliction of emotional distress."  (Duste v. Chevron

14   Products Co., 738 F.Supp.2d 1027, 1040 (N.D. Cal. 2010)).  "Plaintiff's complaint

15   asserts claims for both negligent and intentional infliction of emotional distress (the

16   first and second causes of action). Negligent infliction of emotional distress does not

17   exist as an independent tort."  (Spinks v. Equity Residential Briarwood Apartments,

18   171 Cal. App. 4th 1004, 1044-45 (2009)).

19          The hundreds of state and federal opinions holding that no independent tort of

20   negligent infliction of emotional distress exists in California are capably summarized

21   in the following: "however handy the acronym, as our Supreme Court has made

22   abundantly clear, there is no such thing as the independent tort of negligent infliction

23   of emotional distress."  (E.g., Potter v. Firestone Tire & Rubber Co. 6 Cal.4th 965,

24   984 (1993) ("there is no independent tort of negligent infliction of emotional

25   distress"); Burgess v. Superior Court,  2 Cal.4th 1064, 1072 (1992) ("We have

26   repeatedly recognized '[t]he negligent causing of emotional distress is not an

27   independent tort, but the tort of negligence.'"); Christensen v. Superior Court, 54

28   Cal.3d 868, 884 (1991)).  "Negligent infliction of emotional distress is not an

8

independent tort...."  (<u>Lawson v. Management Activities, Inc.</u>, 69 Cal. App. 4th 652, 656-57 (1999)).

Plaintiff's (mis)citation to <u>Burgess</u> makes Defendants' point: "We have repeatedly recognized that '[t]he negligent causing of emotional distress is not an independent tort, but the tort of negligence. The traditional elements of duty, breach of duty, causation, and damages apply.'" (<u>Burgess v. Superior Court</u>, 2 Cal. 4th 1064, 1073 (1992)).  As for <u>Dang v. City of Garden Grove</u>, 2011 WL 3419609, at *12 (C.D. Cal. 2011), which denied defendant's motion for summary judgment on a negligent-infliction-of-emotional-distress claim because "a reasonable jury could conclude that Plaintiffs have proven the elements of this claim," this *dicta* cannot be reconciled with overwhelming authority holding to the contrary.  As such, Negligent Infliction of Emotional Distress should be dismissed with prejudice.

## VI.  <u>Intentional Conduct Dooms Causes 21 & 22</u>

The Ninth Circuit recently addressed post-<u>Iqbal</u> pleading standards in <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011), holding that allegations must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Further, "Allegations ... which incorporate each preceding paragraph, regardless of relevancy, are not permitted."  (<u>Destfino v. Kennedy</u>, 2009 WL 63566, at *4 (E.D. Cal. 2009), *aff'd sub nom.* <u>Destfino v. Reiswig</u>, 630 F.3d 952 (9th Cir. 2011)). "This practice has been harshly criticized as a form of 'shotgun pleading' that violates Rule 8's requirement of a 'short and plain statement' and interferes with the court's ability to administer justice." (<u>Id</u>., *citing* <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1129–1130 (11th Cir. 2001)); *see, e.g.,* <u>Salazar v. County of Orange</u>, 2012 WL 12896196, * 2-3 (C.D. Cal. 2012) (complaint dismissed because, *inter alia*, it engaged in an impermissible "shotgun" pleading style which lumps together claims and defendants, and incorporates all preceding paragraphs into each claim)).

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

9

1    It is axiomatic that merely labeling intentional conduct as negligence does not

2  create a viable claim for negligence.  (*See, e.g.,* <u>Mitchell v. Adams</u>, 2010 WL

3  2976073, *31 (E.D. Cal. 2010), *report and recommendation adopted* 2010 WL

4  3397391 (E.D. Cal. 2010) (Granting summary judgment because plaintiff "simply

5  relabel[ed] his constitutional claims as 'negligent,'" finding that "[a]ll of the acts of

6  which plaintiff complains constituted wrongly motivated or not, were intentional, not

7  negligent, conduct.")  "In attacking such pleading, defendant has an obligation to

8  move for a more definitive statement." (<u>Id</u>., *citing* <u>Anderson v. District Bd. of</u>

9  <u>Trustees of Cent. Florida Community College</u>, 77 F.3d 364, 366 (11th Cir. 1996)).

10    Here, the Complaint contains Twenty-Eight Causes of Action: some based on

11  Federal statutes and state legislation, while others spring from common law theories

12  of liability; some require intentional conduct, others nothing more than garden-

13  variety negligence.  However Plaintiff labels her multitudinous theories of recovery,

14  the "core allegations" (Opp'n 1:21) of her Complaint plead intentional conduct by

15  Defendants, which is incorporated and re-incorporated into every single Cause of

16  Action, including the Negligence and Negligence *Per Se*.

17    Plaintiff's "shotgun" Complaint falls far short of the "short and plain

18  statement" to support each cause of action and allege intentional acts as support for

19  causes of action for negligence.  Defendants seek, and are entitled to, a more definite

20  statement as to which facts support Plaintiff's claims for negligence.  It is Plaintiff's

21  burden to parse her own factual allegations—not Defendants.

22  **VII.   <u>Conversion (25TH COA) Fails</u>**

23    As set forth in the Notice of Motion to Dismiss, Ms. Bergado has possession of

24  her passport.  (Cmpl. ¶ 108).  As further set forth in the Notice, Ms. Bergado has

25  never demanded return of her "clothing and other personal items." (Cmpl. ¶ 109).

26  Since there is no allegation that the Velonza Defendants' retention of these items

27  occurred through any wrongful act, demand for their return was required.  (<u>Igauye v.</u>

28  <u>Howard</u>, 114 Cal.App.2d 122, 127 (1952)).

**WALTON & WALTON LLP**
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

## VIII.  <u>False Imprisonment Fails Against Orqueza</u>

Plaintiff's recitation of horn book law on the elements of a claim of false imprisonment does nothing to explain why Orqueza should be subjected to this claim because he purportedly happened to be standing by the gate of an apartment complex when Plaintiff happened to appear, and allegedly said to Plaintiff "You have to put up with it. You are fortunate that you are here."  (Cmpl., at 37).  Nothing more is alleged against Orqueza, other than completely contradictory and conclusory allegations, mimicking the elements of the claim.  (*See* Motion, 9:8-10 ["one cannot both 'be standing by the gate' (Par. 37) and 'physically plac[e] himself between Edelynne and the property gate [and] used intimidation and physiological manipulation to prevent Edelynne from leaving.' (Par. 114)."].)

None of which pleads false imprisonment: the restraint required for the tort of false imprisonment may be effectuated only by means of physical force, ***a threat of force or of arrest***, of physical barriers, or of any form of unreasonable duress. (<u>Fermino v. Fedco, Inc.</u>, 7 Cal. 4th 701, 715 (1994)).

> While actual force is not necessary, it is generally held essential that the conduct of the person complained of must show that force will be used to detain the plaintiff, if necessary, or that the person detaining him does so by some legal authority. The essential thing is the restraint of the person. This may be caused by threats, as well as by actual force; and the threats may be by conduct or by words. If the words or conduct are such as to induce a reasonable apprehension of force, and the means of coercion are at hand, a person may be as effectually restrained and deprived of liberty as by prison bars. (<u>Vandiveer v. Charters</u>, 110 Cal. App. 347, 255-56 (1930)).

The fact that, once adequately pled, what is a "restraint" is generally a question for the jury does *not* negate Plaintiff's duty to plead adequate facts in the first instance to show that defendant's conduct would have "furnished a reasonable apprehension on the part of the one restrained that she would not be allowed to depart" – be it force, actual threat, implied threat or some combination thereof.

Here, there are no facts alleged against Orqueza other than he was standing by a gate one day when Plaintiff appeared, and stated:  "You have to put up with it. You

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

1  are fortunate that you are here." (Cmpl. ¶ 37). Those facts do not constitute force, an

2  actual threat of force, or an implied threat of force. As such, the essential element of

3  restraint is not pled and the Cause should be dismissed.

4  **IX.   FLSA Preempts State Common Law Claims**

5       The law in the Ninth Circuit is not ambiguous. State common law claims "that

6  are directly covered by the FLSA (such as overtime and retaliation disputes) must be

7  brought under the FLSA." (<u>Helm v. Alderwoods Group, Inc.</u>, 696 F.Supp.2d 1057,

8  1075 (N.D. Cal. 2009)). This is to be distinguished from claims based upon state

9  statutes that completely depend upon FLSA for their viability, which are not

10  preempted. (<u>Wang v. Chinese Daily News, Inc.</u>, 623 F.3d 743, 759-60 (9th Cir.

11  2010) *vacated and remanded for reconsideration on other grounds* by 565 U.S. 801

12  (2011); <u>Ribot v. Farmers Ins. Grp.</u>, 2011 WL 13128072 at *6 (C.D. Cal. 2011)).

13       In holding that plaintiffs' common-law claims for unjust enrichment,

14  conversion, fraud, misrepresentation, breach of contract, breach of the implied

15  covenant of good faith and fair dealing, and quantum meruit were preempted by the

16  FLSA, the Court in <u>Helm</u> engaged in an exceptional analysis of FLSA preemption,

17  the FLSA savings clause, and <u>Williamson v. General Dynamics Corp.</u>, 208 F.3d 1144

18  (9th Cir. 2000), the progenitor of this legal principal, concluding:

19       Plaintiffs' claims for unpaid overtime are directly covered by the FLSA.
20       While the FLSA's savings clause allows states and municipalities to
         enact wage and hour legislation that is more favorable to workers than
21       the FLSA, the federal statute preempts common law claims that seek
         remedies for rights protected by the FLSA (such as minimum wage and
22       overtime pay). (<u>Helm</u>, *supra*, 696 F.Supp.2d at 1076).

23  In reaching that conclusion the Court explained:

24       [1] The FLSA savings clause, 29 U.S.C. § 218(a), in relevant part states: "***No provision of***

25  ***this chapter or of any order thereunder shall excuse noncompliance with any*** Federal or ***State law***
    or municipal ordinance ***establishing a minimum wage higher than the minimum wage established***

26  ***under this chapter or a maximum work week lower than the maximum workweek established***

27  ***under this chapter***, and no provision of this chapter relating to the employment of child labor shall
    justify noncompliance with any Federal or State law or municipal ordinance establishing a higher

28  standard than the standard established under this chapter…." (Emphasis supplied.).

**WALTON & WALTON LLP**
**4640 ADMIRALTY WAY**
**FIFTH FLOOR**
**MARINA DEL REY, CALIFORNIA 90292**

12

The Ninth Circuit instructs that there are three types of preemption:

(1) express preemption—where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption—where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption— where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

(Id., *quoting* Williamson, 208 F.3d at 1149). The Court noted neither express nor field preemption were relevant to the plaintiffs' claims under Ninth Circuit law. The court noted at issue in Helm was the second type of conflict preemption: "whether plaintiffs' common law claims stand as an obstacle to the purposes of Congress, as evidenced in the FLSA." (Id.)  The plaintiffs in Helm asserted their common-law claims did not conflict with the FLSA because they sought relief for violations that are not provided by the FLSA. Specifically, the plaintiffs alleged they sought "relief for defendants' failure to compensate plaintiffs for all hours worked[,] regardless of whether plaintiffs were ... paid the minimum wage and regardless of whether plaintiffs worked overtime." (Helm, *supra,* 696 F. Supp. 2d at 1075). The court "agree[d] with plaintiffs that state laws do not stand as an obstacle to the enforcement of the FLSA [when] the state laws regulate conduct outside the ambit of the federal statute" and concluded the plaintiffs' "common law claims are therefore not preempted if plaintiffs seek to hold defendants liable for conduct that is not covered by the FLSA." (Id.)  The court, however, also noted "plaintiffs' characterization of their complaint is not entirely accurate. ... [P]laintiffs' common law claims are at least partially duplicative of claims for unpaid overtime that could be brought under the FLSA." (Id.)  The plaintiffs asserted "even common law claims that are duplicative of the FLSA are not preempted," but the court rejected that assertion.

The Ninth Circuit rejected this argument in Williamson. "Claims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." Williamson, 208 F.3d at 1154. *Accord* Anderson v. Sara Lee Corp., 508 F.3d 181, 194–95 (4th Cir. 2007)(collecting district court cases "deeming state claims to be

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

13

1    preempted by the FLSA where those claims have merely duplicated
     FLSA claims.").

2                                           …

3    [I]n <u>Williamson</u>, the Ninth Circuit found that the state law at issue was
     not covered by the FLSA; it was not a duplicative claim and thus was
4    not preempted. Id. at 1153. Because the underlying claim in <u>Williamson</u>
     did not involve "[c]laims that are directly covered by the FLSA (such as
5    overtime and retaliation disputes) [which] must be brought under the
     FLSA," they were not preempted. (<u>Id</u>. at 1076.)

6

7         Thus, to the extent that the plaintiffs' **common law claims** were duplicative of

8    claims directly covered by the FLSA, the court found those claims to be preempted.

9         Plaintiff's argument that her state common law claims are not preempted by

10   FLSA rests heavily upon <u>Wang v. Chinese Daily News, Inc.</u> That case is inapposite,

11   however; <u>Wang</u>'s holding—that California Business & Professions Code section

12   17200 is not preempted by FLSA, because section 17200 "borrows" its substantive

13   standard from FLSA—teaches us nothing about whether state common law claims

14   *are* preempted. (623 F.3d 743, 759-60 (9th Cir. 2010) *vacated and remanded for*

15   *reconsideration on other grounds* by 565 U.S. 801 (2011)). <u>Wang</u> did not "reach the

16   opposite conclusion" from <u>Williamson</u>, as argued by Plaintiff (Opp'n 19:11), since

17   <u>Wang</u> was *not* discussing the common law claims at issue in <u>Williamson</u>.

18        <u>Ribot v. Farmers Ins. Grp.</u> is likewise inapt; as Judge Pregerson recognized,

19   FLSA only preempts a state common law claim that "borrows its substantive standard

20   from FLSA." (2011 WL 13128072 at *6 (C.D. Cal. 2011)). The cases cited by <u>Ribot</u>

21   in reaching that conclusion, <u>Wang</u> and <u>Rose</u>, both dealt with statutory claims under

22   California and Arizona law—not state common law that (as here) duplicate the relief

23   provided by FLSA. In both cases, the state statutes "completely depend on the FLSA

24   for their viability." (<u>Rose v. Wildflower Bread Co.</u>, 2011 WL 196842 at *4 (D. Az.

25   2011)). Plaintiff attempts to glean from <u>Ribot</u>'s terse holding the broad rule that

26   FLSA can *never* preempt state common law claims. That reading is unsupported by

27   the language the Court used—and is directly contradicted by the very cases <u>Ribot</u>

28

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

14

1   cites.  If <u>Ribot</u> in fact said what Plaintiff cites it for, Defendants respectfully submit

2   the holding is overbroad and wrong on its face.

3           <u>Carrillo v. Schneider Logistics, Inc.</u> is likewise inapt; there, the Court held that

4   Walmart's *respondeat superior* liability for acts of its contractors and subcontractors

5   was not preempted by FLSA.  (2013 WL 12124123, at *5 (C.D. Cal. 2013)

6   (acknowledging that the Court might be "creating a new legal theory").

7           Without belaboring the obvious, none of these cases dilute the Ninth Circuit's

8   holding in <u>Williams</u> that state common law claims duplicative of the FLSA are

9   preempted.  (<u>Helm</u>, *supra*, 696 F. Supp. 2d at 1075-76 (preempting plaintiffs'

10  common law claims that are at least partially duplicative of claims for unpaid

11  overtime that could be brought under the FLSA.)

12          With respect to Federal interpretation of California state "new right-exclusive

13  remedy" doctrine, Plaintiff has found one of the few district court cases that permitted

14  plaintiffs to assert common law conversion claims for wage and hour violations,

15  holding the doctrine to be inapplicable.  (<u>Sims v. AT & T Mobility Servs. LLC</u>, 955

16  F. Supp. 2d 1110, 1116 (E.D. Cal. 2013); *see also* <u>Rodriguez v. Cleansource, Inc.</u>,

17  2015 WL 5007815, at *9 (S.D. Cal. 2015) (same, relying on reasoning in <u>Sims</u>)).

18          But most District Courts recognize this doctrine to bar common law claims.

19  (*See* <u>Lopez v. Aerotek, Inc.</u>, 2015 WL 4504691, at *3 (C.D. Cal. 2015) ("employees

20  cannot bring a claim for conversion based on a defendant's failure to pay wages

21  under the Labor Code because the Labor Code provides an extensive and exclusive

22  remedial scheme to address such disputes"); <u>Santiago v. Amdocs, Inc.</u>, 2011 WL

23  1303395, at *3 (N.D. Cal. 2011) (dismissing the plaintiff's conversion claim in light

24  of cases consistently holding that a plaintiff cannot bring a conversion claim based on

25  solely on statutory wage and hour violations); <u>Madrigal v. Tommy Bahama Grp.,

26  Inc.</u>, 2010 WL 4384235, at *6 (C.D. Cal. 2010); <u>In re Wal–Mart Stores, Inc. Wage &

27  Hour Litig.</u>, 505 F. Supp. 2d 609, 618-19 (N.D. Cal. 2007); <u>Green v. Party City

28  Corp.</u>, 2002 WL 553219, at *5 (C.D. Cal. 2002)).

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

15

1     As explained in Helm:

2     The 'new right-exclusive remedy' doctrine provides that: '[W]here a
      statute **creates** new rights and obligations not previously existing in the
3     common law, the express statutory remedy is deemed to be the exclusive
      remedy available for statutory violations, unless it is inadequate.
4     However, when the statute merely **recognizes** a cause of action (because
      the claim had a preexisting common law analogue), then all forms of
5     relief granted to civil litigants generally, including appropriate punitive
      damages, are available unless a contrary legislative intent appears.'   In
6     the labor law context, regulations requiring employers to provide meal
      breaks and rest breaks and regulating pay stubs and minimum wages
7     "create new rights and obligations not previously existing in the
      common law." [Citation].   Any common law claims premised on these
8     violations are therefore preempted.   (696 F. Supp. 2d at 1076).

9

10         Here, Unjust Enrichment (COA 27), and Quantum Meruit (COA 28) are based

11    entirely on the alleged failure to pay Plaintiff for her labor.   (Cmpl. ¶¶ 120, 126).   In

12    turn, Bergado's statutory claims for failure to pay requisite wages for her labor

13    entirely subsume the damages sought in Causes 27 and 28:  (1) Failure to pay

14    minimum wages under the FLSA (12th Claim); Failure to pay minimum wages under

15    Cal. Lab. Code § 1197 (13th Claim); (3) Failure to Pay Overtime in Violation of Cal.

16    Lab Code §§ 510, 1198 and Cal. Industrial Welfare Commission Wage Order ("Wage

17    Order") Nos. 5 and 15 (14th Claim); (4) Failure to Provide Meal and Rest Periods in

18    Violation of  Cal. Lab. Code § 226.7 (15th Claim); (5) Failure to Provide Wage

19    Statement in Violation of Cal Lab. Code § 226 (16th Claim); and (6) Waiting Time

20    Penalties Pursuant to Cal. Lab. Code § 203 (17th Claim).

21         Plaintiff's common law claims for Unjust Enrichment and Quantum Meruit

22    seek nothing more than unpaid wages under FLSA and Cal. Lab. Code § 1197; as

23    such, they are subsumed and preempted by her FLSA claim.   (Williamson, *supra,* 208

24    F.3d at 1159 (state common law "[c]laims that are directly covered by the FLSA

25    (such as overtime and retaliation disputes) must be brought under the FLSA."); Helm,

26    *supra,* 696 F. Supp. 2d at 1075 (same); Anderson, *supra,* 508 F.3d at 194-95

27    ("deeming state claims to be preempted by the FLSA where those claims have merely

28    duplicated FLSA claims.")).

16

1    Further, Plaintiff seeks nothing more than the statutory remedies afforded to

2    her under the Labor Code, which are preempted and subsumed under the "new right

3    exclusive remedy." She seeks compensation for her "services" (Cmpl. ¶¶ 120, 126),

4    to wit: failure to pay minimum wages under Cal. Lab. Code § 1197; failure to pay

5    overtime in violation of Cal. Lab Code §§510, 1198 and Wage Order Nos. 5 and 15;

6    failure to provide meal and rest periods in violation of  Cal. Lab. Code § 226.7;

7    failure to provide wage statement in violation of Cal Lab. Code § 226; and waiting

8    time penalties pursuant to Cal. Lab. Code § 203.  All of those rights never existed,

9    and do not exist, in California's common law.  (Helm, *supra,* 696 F.Supp.2d at 1076,

10   *citing* Brewer, *supra,* 168 Cal. App. 4th at 1252).  As such, they are subsumed.

11   As to Plaintiff's attempt to recast her duplicative claims for quantum meruit

12   and unjust enrichment as "quasi-contract claims" (Opp'n 20:21), this attempted pivot

13   away from the statutory remedies she is seeking warrants—at the very least—a more

14   definite statement.

15                          Respectfully submitted,

16   Dated: February 19, 2018          WALTON & WALTON, LLP

17
                                By: /s/  L. Richard Walton
18                                   L. Richard Walton
19                                   *Attorneys for All Defendants*

20

21

22

23

24

25

26

27

28

WALTON & WALTON LLP
4640 ADMIRALTY WAY
FIFTH FLOOR
MARINA DEL REY, CALIFORNIA 90292

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS